IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WANDA G. WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:06-cv-944-WC |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C.§§ 401, *et seq.* and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42. U.S.C. §§ 1381, *et seq.*, Wanda G. Ward ("Ward" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c), and for reasons herein explained, the court remands the Commissioner's decision.

## I. NATURE OF THE CASE

Ward requests judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits and

supplemental security income.  United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.  The court reviews a social security case to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards.  *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence."  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence).  This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied."  *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999), (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis*, 125 F.3d

at 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d

842 (1971) and *MacGregor v. Bowen*, 785 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d

at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402

U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court

will affirm, even if the court would have reached a contrary result as finder of fact, and even

if the court finds that the evidence preponderates against the Commissioner's decision.

*Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view

the record as a whole, taking into account evidence favorable as well as unfavorable to the

decision.  *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986)).

The district court will reverse a Commissioner's decision on plenary review if the

decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton*

*v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal

citations omitted).  There is no presumption that the Secretary's conclusions of law are valid.

*Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III. PROCEEDINGS

Ward claims disability due to obesity; leg, foot, hip, and back problems; carpel tunnel

syndrome; hypertension; migraine headaches; thyroid problems; and anemia.  (Tr. 12).

Following initial administrative denial of her claim, Ward requested a hearing before an administrative law judge ("ALJ") (Tr. 35). ALJ John T. Yeary convened an evidentiary hearing on December 1, 2005. (Tr. 324-343).[1] Ward was represented by an attorney, Tamika Watkins.

ALJ Yeary received direct testimony from Ward. The remaining evidentiary record consisted of medical reports from treating sources and a "residual functional capacity assessment" completed by medical consultants who reviewed Ward's medical records upon request of Alabama Disability Determination Services.[2]

## IV. ADMINISTRATIVE DECISION

### A.      Sequential Evaluation Process

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520, 416.920 (2005); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). When a claimant is found disabled – or not – at an early step, remaining steps are not considered. *Id*. This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler*

---

[1]      The hearing was held via video conference. Ward, her attorney Tamika Watkins, and the hearing reporter were located in Dothan, Alabama. ALJ Yeary was located in Charleston, West Virginia. (Tr. 326)

[2]      Donyle Briley (Tr. 111-118). "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a)(2005).

*v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on a claimant through Step 4. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  As such, the claimant bears the burden of proof for the following:

  (1)  Whether she is currently performing a substantial gainful activity;

  (2)  Whether she has a severe impairment;

  (3)  Whether that severe impairment meets or exceeds an impairment in the listings; and

  (4)  Whether she can perform her past relevant work.

*Id.*; *Phillips*, 357 F.3d at 1237-39.  When a claimant carries the Step 1 through Step 4 burden, the proof establishes a *prima facie* case of qualifying disability.  It is only at the fifth step that the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Doughty*, 245 F.3d at 1278.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC").  *Phillips*, 357 F.3d. at 1238-39.  RFC is what the claimant is still able to do despite her impairments, and is based on all relevant medical and other evidence.  *Id*.  Morever, it can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work

experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[3] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

**B.      Findings and Conclusions**

ALJ Yeary found that Ward was a forty-seven (47) year old female with a high school education and past relevant work as a housekeeper, waitress, and cook. (Tr. 12). Employing the five step process, ALJ Yeary found that Ward has not engaged in substantial gainful

---

[3]      *See* 20 C.F.R. pt. 404 subpt. P, app. 2

activity since the alleged onset date (Step 1); has a severe impairment (Step 2)[4]; the impairment does not meet or equal in severity any impairment set forth in the listings (Step 3); and Ward is unable to perform any of her past relevant work (Step 4). (Tr. 18). As such, Ward established her *prima facie* case. Thus, ALJ Yeary analyzed whether Ward's impairment prevents her from performing work in the national economy that accommodates her RFC and vocational factors.

Utilizing "Medical-Vocational Guidelines"[5] as a "framework" for his decision, ALJ Yeary determined that Ward "can perform the demands of the full range of sedentary work, a finding of 'not disabled' is directed by the Medical-Vocational Rule 201.28 at the alleged onset date, and 201.21 upon attainment of age 45." (Tr. 18).

### V. ISSUES

Ward raises four issues on appeal:

(1)     Whether the Commissioner's decision should be reversed because the ALJ's residual functional capacity finding is not supported by substantial evidence;

(2)     Whether the Commissioner's decision should be reversed because the ALJ committed reversible error when he concluded Ward's only severe impairment was obesity;

(3)     Whether the Commissioner's decision should be reversed because the ALJ erred in relying on the Grids in determining whether jobs exist in the national economy that Ward could perform;

---

[4]     ALJ Yeary found Ward's obesity is a "severe" impairment, based upon the requirements in the Regulations (20 CFR §§ 404.1520 and 416.920).

[5]     See Sec. VI.(C), *infra*, for discussion of Medical-Vocational Guidelines.

> (4)     Whether the Commissioner's decision should be reversed and an award
> of benefits should be entered because of the *combination* of Ward's
> impairments would prevent the performance of continuous work
> activity.

Pl. Br. at 12; *see also* Def. Br. at 4.

Defendant asserts the ALJ's decision is supported by substantial evidence, the ALJ

properly determined Ward's severe impairments, and properly applied the Grids.[6]  Def. Br.

at 4-8.  However, Defendant asserts if the Court disagrees then remand, not reversal would

be the proper remedy, since the record does not overwhelmingly support Ward's claims of

disability.  Def. Br. at 8-9.

## VI.  DISCUSSION AND ANALYSIS

### A.     Whether residual functional capacity finding is supported by substantial evidence[7]

Ward asserts ALJ Yeary's residual functional capacity (RFC) determination is not

supported by substantial evidence. Pl. Br. at 12-13.  RFC is assessed by considering all the

relevant medical and other evidence.  20 C.F.R. §§ 404.1545(a), 416.945(a).  ALJ Yeary

found Ward retained the RFC to perform work at the sedentary exertional level.  (Tr. 16, 18).

He specifically addressed Ward's medical records and the RFC assessment completed by a

---

[6]     Defendant's brief does not specifically address Issue Four presented by Plaintiff,
but rather Section "D" simply asserts the ALJ's decision is supported by substantial evidence, but
should the Court disagree remand and not reversal would be the proper remedy.  Def. Br. at 8-9.

[7]     Ward proffers the ALJ's failure to consider the combination of alleged disabilities
as a separate issue, however, a failure to consider the combination of impairments would fall
under the ALJ's assessment of Ward's RFC.  As such, the Court combines Issues One and Four.

medical consultant. (Tr. 14-17).  Moreover, ALJ Yeary found Ward's allegations were less credible due to inconsistencies in the record and her testimony. (Tr. 16-17).

Ward also contends ALJ Yeary failed to consider the combined effects of her alleged impairments.  The regulations require an ALJ consider not only a claimant's impairments separately, but also in combination.  20 C.F.R. §§ 404.1522(b) and 404.1523.  It is well established that an ALJ must consider the combined effects of claimant's impairments in determining whether she is disabled. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986)).  Moreover, when "a claimant has alleged a multitude of impairments, a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling." *Id*. (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)).  The ALJ must "make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."  *Id*. (citations omitted).

ALJ Yeary does not make any reference to having considered Ward's numerous complaints in combination.  Though he does address each complaint individually, there is no specific analysis as to whether the combination of impairments is disabling.  As such, ALJ Yeary's failure to consider the complaints in combination requires that the decision be reversed and remanded for reconsideration. *Walker*, 826 F.2d at 1001-02 (citing *Hudson v. Heckler*, 755 F.2d 781, 785 (11thCir. 1985)).  Thus, the Court remands this case for review of all the evidence under the proper legal standards.

**B.      Obesity as sole severe impairment claim**

Ward asserts "the Commissioner's decision should be reversed, because the ALJ committed reversible error when he concluded Ms. Ward's only severe impairment was obesity." Pl. Br. at 12, 14.  As *phrased*, this point suggests that ALJ Yeary did not apply correct principles of law.  As actually *argued*, Ward contends that ALJ Yeary's Step 2 decision lacks substantial evidentiary support.  Plaintiff specifically states "[t]he overwhelming weight of the evidence shows that Ms. Ward suffers from multiple severe physical impairments in addition to obesity." Pl. Br. at 14.

To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:

(1)    Evidence of an underlying medical condition; and either

(2)    Objective medical evidence confirming the severity of the alleged pain; or

(3)    That the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

In the case at hand, although ALJ Yeary does not specifically cite or refer to the language of the three-part test in *Holt*, his findings and discussion indicate that the standard

was properly applied.  *See Wilson*, 284 F.3d at1225-26 (the ALJ did not cite or refer to the language of the three-part test in *Holt*, but the findings and discussion indicated that the standard was applied).  Further, ALJ Yeary cites to 20 C.F.R. § 404.1529 which "contains the same language regarding subjective pain testimony" that the Eleventh Circuit interpreted when initially establishing the three-part pain standard.  *Id*. at 1226 (citations omitted); *see also* Tr. 16 (for ALJ Yeary's reference to statute and  Social Security Ruling 96-7p).  Based on the above, ALJ Yeary clearly applied the proper pain standard.

Furthermore, ALJ Yeary specifically articulated the following findings:

> The objective medical evidence does not constitute severe impairments due to leg, foot, hip, and back problems.  Although the claimant testified that she experiences chronic leg pain and that her major problem is attributed to leg problems; during her most recent physical therapy session on August 27, 2004, the claimant had met all goals and reported experiencing no back pain and only aching of her leg (Exhibit 1F-1).  This is inconsistent with the claimant's testimony that she experiences pain at the eight out of ten level on good days and ten out of ten level on bad days.  As previously addressed in the body of this decision, a consultative physical examination by Dr. Banner on January 21, 2004, was essentially within normal limits (Exhibit 3F).  The evidence reflects no treatment for leg, foot, hip, and back problems even though the claimant testified she has had medical insurance since June 2004.

(Tr. 14).  ALJ Yeary also specifically addressed Ward's individual claims of carpal tunnel syndrome, hypertension, migraine headache, thyroid problems, anemia, as well as obesity.[8]

(Tr. 14-15).   Further, he found "[t]he claimant's complaints at the hearing are out of

---

[8]        The Court notes ALJ Yeary only addressed each issue individually and not in combination.  As such, in this section of the Memorandum Opinion the Court is merely addressing Issue Two regarding the ALJ's conclusions regarding the severity of each individual impairment wherein ALJ Yeary concluded Ward's only severe impairment was obesity.

proportion to her symptoms and diagnoses of record, especially since she testified that she has had medical coverage since June 2004." (Tr. 16).  ALJ Yeary provided a detailed description of Plaintiff's medical records. (Tr. 13-16).  Additionally, ALJ Gilliland provides a detailed list of Plaintiff's daily activities. (Tr. 19).  In sum, ALJ Yeary considered Ward's medical records and her testimony and concluded that Plaintiff's subjective complaints were inconsistent with her testimony and medical record.  Based on the above, this Court finds the ALJ made a reasonable decision to reject Plaintiff's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so.  Applying the pain standard, ALJ Yeary properly considered Plaintiff's assessment of her pain level, and determined that it was not credible to the degree alleged because the objective evidence did not confirm the severity of Plaintiff's alleged limitations. Consequently, the third prong of the *Holt* pain standard was not met.  *Wilson*, 284 F.3d at 1226.  Accordingly, the determination that obesity was Ms. Ward's sole individual "severe" impairment was based on substantial evidence and a correct application of the law.[9]

## C.    ALJ's Reliance on the Grids

Once the ALJ finds a claimant cannot return to her prior work, the burden shifts to the Commissioner to establish the claimant could perform other work that exists in the national economy.  *Foote*, 67 F.3d at 1559 (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

---

[9]      As such, the ALJ does not need to individually scrutinize each alleged impairment again on remand.  Rather, as instructed in the prior section, he simply needs to analyze and address the alleged impairments in combination prior to reaching an RFC assessment.

As previously noted, this burden can be satisfied by either considering vocational expert testimony or reliance on the Medical-Vocational Guidelines ("grids").[10]  Ward asserts ALJ Yeary erred in relying on the grids in finding that she could perform other work available in the national economy.  (Tr. 14-15).

These Medical-Vocation guidelines include detailed grids and rules which take into account age, education, work experience, and RFC.  *Walker*, 826 F.2d at 1002.  When the individual factors of a particular claimant are compared to the general findings in the grids, the Commissioner determines whether alternative work that the particular applicant can perform exists in the national economy.  20 C.F.R. §§ 404.1569, 416.969.  If the grids produce a finding that substantial jobs are not available the application for benefits is approved and conversely, if the grids produce a finding that such jobs are available, the application is denied.

Exclusive reliance on the grids is appropriate where the claimant suffers primarily from <u>exertional</u> impairments.  *Foote*, 67 F.3d at 1559.  However, exclusive reliance on the grids is inappropriate when a claimant has a <u>nonexertional</u> impairment that significantly limits the claimant's basic work activities.  *Id*. (citing *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed. 66 (1983)).  Pain is a nonexertional impairment.  *Id*. (citing *Walker*,

---

[10]        The grids consist of tables which may be consulted once a claimant's RFC is determined.  The tables direct conclusions of disability or non-disability based upon claimant's age, education, and previous work experience.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201-03

826 F.2d at 1003).   The inability to walk without an assistive device is also a nonexertional impairment.  *Walker*, 826 F.2d at 1003.

ALJ Yeary consulted the grids and determined that a "finding of 'not disabled' is directed by Medical-Vocational Rule 201.28 at the alleged onset date, and 201.21 upon attainment of age 45." (Tr. 18, 19 finding 12).  This is problematic because ALJ Yeary failed to consider Ward's impairments in combination.  Therefore, at this time, it is uncertain whether Ward's nonexertional impairments significantly limit her basic work activities.  As such, on remand, when considering Ward's impairments in combination, the ALJ must make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment.  Depending on the finding as to the nonexertional limitations, it is possible the grids *may not* constitute substantial evidence to support the Commissioner's Step 5 determination.[11]  If Ward's impairments in combination are severe, then the exclusive use of the grids is improper and vocational testimony must be sought.  *See, e.g. Foote*, 67 F.3d at 1562-63.  As such, the case is remanded for reconsideration of this section as well. In light of the potential nonexertional limitations, the Commissioner must develop a full record relating to Step 5.  As such, the ALJ should obtain the opinion of a vocational expert as to Ward's ability to perform the full range of sedentary work <u>or</u> provide a reasoned statement as to how the Medical-Vocational Guidelines (grids) provide a framework for

---

[11]     The grids alone generally do not constitute substantial evidence for Step 5 when the claimant suffers from nonexertional impairments.

decision making.

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion and Order*, the court concludes that the case should be remanded for review of evidence under the proper legal standards as to Ward's alleged impairments in combination and reconsideration of the Step 5 analysis.  It is, therefore, **ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED**.  A separate order is entered herewith.

DONE this 17th day of August, 2007.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE